**UNITED STATES  DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**Urbana Division**

| | |
|---|---|
| **GEORGE A. CONLEY,**                ) | |
|                              ) | |
|            **Plaintiff,**     ) | |
| **v.**                        ) | |
|                              ) | **Case No. 08-2234** |
| **MICHAEL J. ASTRUE,**        ) | |
| **COMMISSIONER OF SOCIAL SECURITY,**   ) | |
|                              ) | |
|            **Defendant.**    ) | |

# O R D E R

In March 2008, Administrative Law Judge (hereinafter "ALJ") David Thompson denied Plaintiff Gregory Conley's application for supplemental security income.  ALJ Thompson based his decision on a finding that Plaintiff was able to perform jobs that exist in significant numbers in the national economy.

In September 2008, Plaintiff filed a Complaint for Judicial Review (#3) against Defendant Michael Astrue, the Commissioner of Social Security, seeking judicial review of the ALJ's decision to deny social security benefits.  In March 2009, Plaintiff filed a Motion for Summary Judgment or Remand (#11).  In June 2009, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#15).  In August 2009, Plaintiff filed a Reply to Defendant's Memorandum in Support of Commissioner's Motion for Summary Affirmance (#18).  After reviewing the administrative record and the parties' memoranda, this Court **GRANTS** Plaintiff's Motion for Summary Judgment or Remand **(#11)**.

## I.  Background

### A.  Procedural Background

Plaintiff filed a concurrent application for supplemental security income and disability insurance benefits in October 2004, alleging disability beginning January 15, 2001.  His attorney

subsequently acknowledged that Plaintiff was eligible only for supplemental security income. (R. 120.)  The Social Security Administration denied his application initially and on reconsideration.  At Plaintiff's request, the ALJ held a hearing in March 2008.  An attorney represented Plaintiff at the hearing.  Plaintiff and a vocational expert, Ronald Malik, testified at the hearing.  In March 2008, the ALJ issued a decision denying Plaintiff benefits on the basis that he could perform jobs that exist in significant numbers in the national economy.  In July 2008, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  In September 2008, Plaintiff appealed this decision by filing a complaint in federal court pursuant to 42 U.S.C. § 405(g).  Plaintiff seeks a reversal of the ALJ's decision or, in the alternative, remand for reconsideration.

The parties have consented to the exercise of federal jurisdiction by a United States Magistrate Judge.

### B.  Factual Background

Dr. Erika Altman completed a mental residual functional capacity (hereinafter "RFC") evaluation in March 2005.  She noted that Plaintiff had moderate limitations in his ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and accept instructions and respond appropriate to criticism from supervisors.  She ultimately summarized Plaintiff's mental limitations in narrative form, stating that Plaintiff could perform "simplel, [sic] routine tasks."  (R. 241.)  Dr. Altman also completed a Psychiatric Review Technique form.  She rated him as having a mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and one or two episodes of decompensation.  (R. 235.)  In her narrative description, she stated that he demonstrated good concentration and judgment. (R. 237.)

In March 2005, Dr. Sandra Bilinsky assessed Plaintiff's physical RFC, and concluded that he could perform light work. (R. 250.) In particular, she found that Plaintiff's ability to perform fine and gross manipulations were unimpaired. (R. 246, 250.)

The ALJ found that Plaintiff has severe impairments including degenerative disc disease, arthritis, and anxiety. (R. 18.) The ALJ determined that Plaintiff has RFC to perform light work "except he is limited to occasional contact with the public, coworkers, and supervisors. He is limited to moderately complex or detailed tasks due to his mental impairments." (R. 21.)

At the hearing held March 2008, the ALJ asked Plaintiff to tell in his own words why he was unable to work. Plaintiff testified that he could not work mostly because of his hands. He stated that he has nodules on his knuckles that are very painful and he could barely grip. He also testified that he has degenerative disc disease and can stand for only about 30 to 45 minutes at a time, sit for only about 30 to 45 minutes at a time, lift around 20 pounds or less, and walk only about four to six blocks. He could alternate sitting and standing for about four hours total. He cannot bend over. Because of his anxiety and depression, he finds it difficult to be around people. Because of his bipolar disorder, he has trouble staying with one thing, jumbled thoughts, and difficulty focusing and concentrating. (R. 371-74.)

When questioning the VE, the ALJ asked about an individual who was limited to light work, limited to occasional contact with the public, coworkers, and supervisors, and limited to moderately complex or detailed tasks. (R. 386.) The VE testified that such a hypothetical individual would be unable to perform Plaintiff's past work, but he could work as a hand packager or packaging machine tender. The individual could perform those two representative jobs even if he were limited to unskilled work, because both jobs are classified as unskilled. If the individual could engage in gross manipulation only occasionally, he would be unable to perform those jobs. If the individual could engage in fine manipulation only occasionally, he would be unable to perform the jobs.

## II.  Standard of Review

In reviewing an ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's finding with the Court's own assessment of the evidence.  *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989).  The findings of the Commissioner of Social Security as to any fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Thus, the question before the Court is not whether a plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's findings.  *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).  The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether a plaintiff is disabled, the Court must affirm the ALJ's decision denying benefits.  *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996).

The Court also defers to the ALJ's credibility findings.  This deferential standard acknowledges that the reviewing court does not have the opportunity to hear and see witnesses, as the ALJ does.  *Sims v. Barnhart*, 442 F.3d 536, 537-38 (7th Cir. 2006).  Therefore, courts uphold an ALJ's credibility finding as long as the record affords some support for the finding.  *See Urban v. Sullivan*, 799 F. Supp. 908, 911 (C.D. Ill. 1992) (stating that courts give considerable deference to the ALJ's credibility finding and will not overturn it unless the plaintiff can show that those findings are patently wrong).

## III.  Discussion

Plaintiff argues that the Court should reverse or remand his case because:  (1) the ALJ erred when assessing Plaintiff's RFC; (2) the ALJ erred when assessing credibility; and (3) at Step Five, the ALJ's hypothetical questions were incomplete and the ALJ failed to perform his duty under SSR 00-4p.

## A. The RFC Determination

Plaintiff first contends that the ALJ erred when assessing Plaintiff's RFC because he improperly dismissed Plaintiff's bipolar disorder condition, failed to consider all the evidence and take into account Plaintiff's limitations, and failed to consider the aggregate affect of Plaintiff's combination of impairments.

## 1. Mental Condition

Plaintiff contends that, although the ALJ relied on the State agency doctors' opinions, he failed to account for all of the State agency findings regarding Plaintiff's mental limitations. Specifically, Plaintiff notes that Dr. Erika Altman found Plaintiff was moderately limited in his ability to maintain regular attendance and accept instructions and criticism from supervisors, and he was limited to simple, routine tasks. (#12, p.. 9.) In addition, Plaintiff pointed out that the ALJ expressly found that Plaintiff had moderate deficiencies in concentration, persistence, and pace. (#12, p. 14.) Nevertheless, the RFC did not account for these limitations and it ultimately limited Plaintiff to a higher level of tasks. In addition, Plaintiff contends that the ALJ did not adequately discuss the State agency doctor's findings, stating only that those findings "deserve some weight as they support the residual functional capacity." (R. 23.) Plaintiff contends that this treatment of the State agency doctors' opinions is inadequate because it does not explain the ALJ's reasoning or build an accurate and logical bridge between the evidence and the ALJ's findings. *McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2004).

Defendant responds that a mental RFC need not expressly include limits checked off in a mental RFC assessment form when the ALJ uses the reviewer's narrative translation of the limitations to describe a claimant's RFC. *See Johansen v. Barnhart*, 314 F.3d 283, 288 (7th Cir. 2002) (upholding an ALJ's mental RFC where the RFC incorporated the state agency reviewer's conclusion that translated the form into a narrative description). The Court agrees with that statement. However, the ALJ's description of Plaintiff's mental RFC raises other issues.

In general, an ALJ cannot "translate" a mental limitation into words describing work such as unskilled, simple, repetitive, routine, one- or two-step, or any similar characterization, because these descriptions may not account for all the limitations a doctor meant to convey. *See Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (rejecting the contention that "the ALJ accounted for Stewart's limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interaction with coworkers or the general public"); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (finding that the ALJ's limitation to simple, unskilled work did not adequately address a claimant's undisputed difficulty with concentration). Only if the record shows that a doctor used particular descriptive language to describe what work a claimant can perform in spite of his limitations can the ALJ use that language in the RFC or hypothetical question to the VE. *See Johansen*, 314 F.3d at 289.

As noted above, Dr. Erika Altman completed a mental RFC evaluation in March 2005. She summarized Plaintiff's mental limitations in narrative form, stating that Plaintiff could perform simple, routine tasks. (R. 241.) However, the ALJ did not use the reviewing doctor's narrative language in his RFC. Instead, the ALJ's decision addressed Plaintiff's mental limitations by stating that he was "limited to moderately complex or detailed tasks due to his mental impairments." (R. 21.) The ALJ used the same language in his hypothetical questions to the VE.

On its face, the phrase the ALJ used means that Plaintiff could *not* perform simple, routine work. As an initial matter, Defendant contends that a common-sense reading of the decision shows that the ALJ meant to say "restricted from," rather than "limited to." If the Court were to accept that the ALJ said what he meant, that conclusion is clearly not supported by the evidence. However, even if the Court agreed with Defendant that the ALJ meant that Plaintiff is "restricted from moderately complex or detailed tasks," the Court still cannot tell whether the ALJ has expanded Plaintiff's RFC beyond the level Dr. Altman described, i.e., simple, routine

work.  Based on Seventh Circuit case law, the Court concludes that the language the ALJ used in the RFC and hypothetical questions constitutes an improper "translation" of Plaintiff's limitations.  For this reason, the Court will remand the case for reconsideration.

On remand, the ALJ's RFC and hypothetical questions to the VE should account for Plaintiff's limitations regarding concentration, persistence, and pace, and any other limitations supported by the record, avoiding improper "translations" of those limitations.  *See Heron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994) (stating that the hypothetical question posed by the ALJ to the vocational expert must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record).  In particular, if the ALJ determines that the evidence does not support the limitations that Plaintiff has referred to in his brief, the ALJ should explain his reasoning, rather than relying on general statements such as "those opinions do deserve some weight."  (*See* R. 23.)  That type of statement does not inform the Court of what portion of a particular opinion the ALJ has given weight to, what part he has rejected, and why.  *See Scott v. Barnhart,* 297 F.3d 589, 595 (7th Cir. 2002) (stating that an ALJ is required to build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review.").

Plaintiff next contends that the ALJ failed to take into account his bipolar disorder which, in combination with his panic disorder, severely limited his ability to function in a work environment.  Plaintiff expressly refers to the fact that he received treatment for nearly two years from Dr. James Pletcher, during which time he exhibited symptoms of excessive mood swings, anhedonia, depressed mood, inability to complete tasks, isolation, and inability to cope with outside stress.  The record shows that Dr. Pletcher treated Plaintiff in Oklahoma from about May 2001 through April 2003, at which time Plaintiff moved out of the state.  Plaintiff also refers to the fact that he received treatment at Provena Behaviorial Health Center for moderate

7

bipolar disorder including prescription medication.  Specifically, Plaintiff contends that the ALJ failed to discuss the evidence of bipolar disorder and its effects on Plaintiff's RFC, in violation of SSR 96-8p.

The ALJ acknowledged Plaintiff's treatment with Dr. Pletcher in Oklahoma and also noted that Plaintiff resumed treatment in Illinois in November 2003.  The ALJ stated that medical records indicate that Plaintiff's condition was stable when he was compliant with his medications.  In addition, the ALJ stated that medical records dated November 2003 through February 2008 show that Plaintiff's overall mental condition was stable.  (R. 19.)  Throughout this description, the ALJ did not indicate that the treatment was for Plaintiff's bipolar disorder diagnosis.  Later in the decision, the ALJ noted that Plaintiff was taking medication for anxiety and bipolar disorder.  (R. 19.)

Throughout his decision, the ALJ never mentioned that Plaintiff had been diagnosed with bipolar disorder.  Although an ALJ is under no obligation to articulate his reasons for rejecting every piece of evidence before him, he cannot ignore an entire line of evidence or select and discuss only the evidence that favors his ultimate conclusion.  *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995); *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).  The Court finds it troubling that, although the ALJ did talk about some of the relevant evidence, he failed to tie the diagnosis to the evidence or to explain his reasoning for determining that Plaintiff's bipolar disorder did not constitute a severe impairment.  Based on the decision, the Court cannot tell what the ALJ thought about the evidence regarding Plaintiff's bipolar disorder.

The ALJ's consideration of this case, including the bipolar disorder diagnosis, is made more difficult because the alleged onset date is January 2001 and the relevant records cover at least seven years, during which Plaintiff's condition appeared to vary substantially.  Because the Court is remanding the case for consideration of Plaintiff's mental RFC, the Court directs the ALJ to consider Plaintiff's diagnosis of bipolar disorder and related evidence and to explain his reasoning regarding that evidence in light of the lengthy period covered by the records.

8

## 2. Physical Condition

Plaintiff also contends that the ALJ noted degenerative disc disease and arthritis, but failed to include any manipulative limitations in the RFC. Instead, the ALJ ignored Plaintiff's pain and limited Plaintiff to light work. Plaintiff contends that this constituted error because an ALJ is required to address uncontradicted evidence that supports disability. *See Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985).

The Court has reviewed the records Plaintiff cited in support of this argument. In January 2003, Dr. William Smith opined that Plaintiff had painful cervical spondylosis and degenerative lumbar disc disease. Dr. Smith also noted that Plaintiff had early Dupuytren's contractures. (R. 132.) In January 2005, regarding Plaintiff's physical condition, Dr. Kaushik Patel observed that Plaintiff had Dupuytren's contractures of the left fourth and fifth fingers and the right fifth finger, but noted that he can grasp things with both hands without difficulty. He has normal range of motion of other joints including spine and extremities. Dr. Patel noted that Plaintiff was able to move around and get on and off the examination couch without difficulty. (R. 218-20.)

Plaintiff has not pointed to any *uncontradicted* evidence that supports a conclusion that his degenerative disc disease and arthritis limited his ability to work. As noted above, although it is undisputed that Plaintiff had degenerative disc disease, arthritis, and Dupuytren's contractures, Dr. Smith did not mention any restrictions caused by those decisions, and Dr. Patel expressly noted that Plaintiff was able to grasp things with both hands without difficulty and he had normal range of motion in his joints, including his back. The ALJ acknowledged that Plaintiff had presented at the emergency room in September 2007 complaining of back pain and hand pain. (R. 319-29.) Nevertheless, the ALJ stated that he determined that Plaintiff's disc disease and arthritis were not disabling conditions because, among other reasons, Plaintiff takes no prescription pain medications on a regular basis, does not receive therapy for those conditions, and has not reported needing help to maintain his residence. The record supports these reasons and, in the absence of uncontradicted evidence that indicates Plaintiff's physical

condition prevented him from working, the Court cannot conclude that the ALJ erred by failing to address relevant evidence on Plaintiff's physical condition.

## B. Credibility

Plaintiff also argues that the ALJ's credibility finding is erroneous because the ALJ ignored SSR 96-7p when he failed to consider Plaintiff's financial limitations, relied on his own mischaracterization of the evidence of record, and based the credibility finding on the ALJ's own lay opinion.  Plaintiff states that the ALJ found Plaintiff not credible because (1) he had a poor work history, indicating that he has not tried very hard to work during his life; (2) he did not have the treatment one would expect if he had disabling impairments; (3) he has never taken pain medications for his back and arthritis condition, does not get physical therapy, and has not been prescribed surgery; and (4) there is no treating doctor opinion in the file.  Plaintiff contends that all these reasons are erroneous.

When evaluating an ALJ's credibility determination, courts give great deference to the assessment because the ALJ has the ability to see and hear witnesses who testify at the hearing. *Sims*, 442 F.3d at 537-38; *Edwards v. Sullivan*, 985 F.2d 334, 337 (1993).  Therefore, the ALJ's credibility determination will generally not be disturbed as long as it has some support in the record.  *Id*. at 337.  In a recent decision, the Seventh Circuit court stated that a court reviewing a credibility determination "merely examine[s] whether the ALJ's determination was reasoned and supported."  *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Jens v. Barnhart*, 347 F.3d 209, 213-14 (7th Cir. 2001)).  "[O]nly when the ALJ's determination lacks any explanation or support . . . [will we] declare it to be patently wrong."  *Id.* at 413-14.

The ALJ explained his reasoning for finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible.  He provided an explanation of his reasoning, including but not limited to Plaintiff's work history prior to the

alleged onset date, the fact that medical records show that Plaintiff's condition is stable when he is compliant with his medication, and the fact that he takes only over-the-counter pain medication for his physical condition.

The ALJ also relied on evidence that Plaintiff has not undergone intensive care for his mental impairments since 2003 and is not always compliant with his medication. However, as Plaintiff pointed out, the Seventh Circuit court has stated that "mental illness in general and bipolar disorder in particular . . . may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment." *Kangail v. Barnhart*, 454 F.3d 627, 629-30 (7th Cir. 2006) (also noting that bipolar disorder is episodic); *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) (stating that failure to seek mental health treatment may be the result of mental illness, rather than an indication that a mental impairment is not severe). The Seventh Circuit court has also recognized that a disabling mental impairment may exist even when a claimant has not been treated by a mental health professions. *Wilder v. Chater*, 64 F. 3d 335, 337 (7th Cir. 1995).

The Court is remanding this case for reconsideration, including reconsideration of Plaintiff's diagnosis of bipolar disorder, which may have implications for the ALJ's credibility assessment. Accordingly, on remand, the ALJ should also explain his credibility evaluation in light of the case law cited in the previous paragraph.

### C. The Hypothetical Questions

Plaintiff also argues that the ALJ's hypothetical questions were incomplete, resulting in an erroneous Step Five determination and the ALJ failed to comply with SSR 00-4p. Because the Court is remanding this case for reconsideration of issues related to Plaintiff's RFC, the Court need not address Plaintiff's remaining arguments at this time. On remand, the ALJ should comply with SSR 00-2p.

## IV. Summary

For the reasons stated above, this Court **GRANTS** Plaintiff's Motion for Summary Judgment or Remand **(#11)** and directs that the case be remanded pursuant to sentence four of 42 U.S.C. § 405(g)[1] for reconsideration consistent with this Order.

ENTER this 5th day of February, 2010.

s/ DAVID G. BERNTHAL
U.S. MAGISTRATE JUDGE

---

[1]Under 42 U.S.C. § 495(g), Sentence Four, "[t]he court shall have power to enter, upon pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a hearing."